UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EUGENE SHERROD,

                               Plaintiff,

    -against-

POLICE OFFICER THOMAS MUTARELLI,
DETECTIVE MICHAEL TENETY, REGISTERED
NURSE NANCY WINIARSKI, and JOHN DOE #3,

                           Defendants.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
20-cv-03312 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), on referral from the Honorable Joanna Seybert for Report and Recommendation, are: (1) Defendants' Police Officer Thomas Mutarelli ("Mutarelli"), Detective Michael Tenety ("Tenety"), and Registered Nurse Nancy Winiarski ("Winiarski," collectively, "Defendants") motion for summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure ("Fed. R. Civ. P."), *see* Defendants' Motion for Summary Judgment ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [44]; and (2) *pro se* Plaintiff Eugene Sherrod's ("Sherrod" or "Plaintiff") motion for leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a), *see* Plaintiff's Opposition to Motion for Summary Judgment and Motion to Amend Complaint ("Plaintiff's Motion" or "Pl. Mot."), DE [47].[1] By way of Complaint dated

---

[1] Plaintiff submitted a letter to the Court dated June 30, 2022 containing his opposition to Defendants' Motion and seeking leave to file an amended complaint. *See* Order dated August 24, 2022. In light of Plaintiff's *pro se* status, the District Court construed this letter to be Sherrod's opposition to Defendants' Motion, despite his failure to comply with the

July 23, 2020, Plaintiff commenced this litigation pursuant to Section 1983 alleging a denial of medical care by police and Suffolk County Correctional Facility staff on the night of his August 14, 2019 arrest. *See* Complaint ("Compl"), DE [1]. For the reasons set forth herein, the Court respectfully recommends that Defendants' Motion be granted in its entirety, that Plaintiff's Complaint be dismissed with prejudice, and that Plaintiff's Motion for leave to amend his Complaint be denied.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the pleadings, affidavits, exhibits, Defendants' Local Civil Rule 56.1(a) statement, and Plaintiff's Motion.[2] Unless otherwise noted, these facts are not in dispute.

#### 1.    Plaintiff's Injury and Arrest

Sherrod resided at 342 Irving Street in Central Islip, New York with his girlfriend, Chaniesa Simmons, and their son in and around August 2019. *See* Pl. Mot. at 7. On August 13, 2019, Plaintiff had an argument with Simmons, after which he drove to a park in Gordon Heights, New York to meet his brother, Dan Davis, at approximately 9:30 p.m. *See* Defendant's Local Rule 56.1 Statement ("Def. 56.1"), DE

---

previously ordered briefing schedule. *See id.*; *see also Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 671 (S.D.N.Y. 2000) (noting that "the Second Circuit has repeatedly ordered the district courts to bend the procedural rules for the benefit of *pro se* litigants").

[2] Although Sherrod did not respond to Defendants' Local Civil Rule 56.1 Statement with corresponding numbered paragraphs addressing each of Defendants' statements as required under the Local Rules, the Court construes the factual assertions contained in Plaintiff's Motion as his counter-statement of facts. *See Ige v. Command Sec. Corp.,* No. 99-cv-6916, 2002 WL 720944, at *1, n. 2 (E.D.N.Y. Mar. 12, 2022) (construing facts contained in *pro se* plaintiff's memorandum of law and deposition testimony as a counter-statement of material facts).

[44-3], ¶¶ 2-3.  Sherrod and Davis argued and had a physical altercation, which concluded with Davis striking Plaintiff on the left side of the head with either a baseball bat or a pipe.  *Id.* at ¶ 4.  Sherrod returned to 342 Irving Street to find his belongings abandoned in the driveway and began putting them in his truck when Davis arrived.  *Id.* at ¶¶ 5-6, 10.  The two men fought for a second time, and Plaintiff ultimately shot Davis in the shoulder.  *Id.* at ¶¶ 11-12.  After the shooting, Sherrod promptly left the scene in his vehicle.  *Id.* at ¶ 13.

Plaintiff drove to Main Street in Patchogue and discarded the gun used in the shooting in a nearby lake.  *Id.* at ¶ 14.  Sherrod testified that he was on his way to a hospital in East Patchogue when his truck ran out of gas, although he was traveling on the westbound Long Island Expressway service road.  *Id.* at ¶¶ 15-16.  After Plaintiff called a friend – identified only as Pete – to bring gas to his location, Suffolk County Police Detective Alton Purdy called Sherrod and asked him to surrender to the Suffolk County Police Department Third Precinct (the "Third Precinct").  *Id.* at ¶¶ 18-19.  According to Plaintiff, his girlfriend called the Suffolk County Police and gave Detective Purdy the number of the cellphone he was using at the time.  Ex. A to Def. 56.1 at 39:13-18; 41:10-13.  Sherrod agreed to surrender but did not indicate that he was on his way to the hospital.  Def. 56.1 ¶¶ 20-21.  While Pete was filing the vehicle with gas, several police officers – including Defendant Mutarelli – arrived at the scene and placed Plaintiff under arrest.[3]  Def. 56.1 ¶¶ 23-24.  While Mutarelli drove him to the Third Precinct, Sherrod asked to be taken to the hospital because he

---

[3] Plaintiff testified that the police used his cellphone number to "pinpoint[] [his location] from the towers."  Ex. A to Def. 56.1 at 41:10-13.

was in pain.  *Id.* at ¶¶ 24-25, 28.  In response, Defendant told Plaintiff that he needed to take him to the station and instructed him to speak to the detectives there.  *Id.* at ¶ 26.  During the drive to the precinct, Sherrod and Mutarelli also had a brief conversation about the upcoming presidential election.  *Id.* at ¶ 27.

### 2. Plaintiff's Interview at the Third Precinct

The parties' versions of what occurred next, while Sherrod was at the Third Precinct and immediately thereafter, are notably different.  The Court addresses each version in turn.

#### a. *Plaintiff's Version*

Arriving at the Third Precinct early in the morning on August 14, 2019, Plaintiff was brought to an interrogation room where he gave a sworn statement to Defendant Tenety and at least one other unidentified detective regarding the shooting.  *Id.* at ¶¶ 28-29; Pl. Mot. at 10-11.  Sherrod claims that neither detective administered *Miranda* warnings prior to taking his statement.  Pl. Mot. at 11.  Tenety asked Plaintiff to recount the incident, recorded his account in writing, and read the statement back to Sherrod.  *Id.*  Although Plaintiff testified that he did not fully understand the statement as it was read to him, he signed it approximately 20 minutes later.  *Id.* at 12.

While he was in the interrogation room, Sherrod asked Tenety if he could go to the hospital.  Def. 56.1 ¶ 30; Pl. Mot. at 11.  Tenety responded that Plaintiff would "be all right" and that the head wound was in the process of healing.  Pl. Mot. at 11. Throughout his discussion with Defendant and the other unidentified detective,

4

Sherrod claims he was in and out of consciousness.  Pl. Mot. at 12.  Plaintiff then went with the detectives to Patchogue and showed them where he had disposed of the gun used to shoot his brother.  *Id.*  Although Sherrod was "conscious enough" to identify the gun's location, he was also "falling asleep" due to his pain.  *Id.*  Plaintiff recalled passing out while the police searched for the gun and waking up later at the Third Precinct.  *Id.*

### b. *Defendants' Version*

According to Defendants, Tenety advised Sherrod of his *Miranda* rights prior to conducting the interview, during which he was assisted by several unidentified detectives.  Def. 56.1 ¶ 56; *see* DE [8].  Defendant observed a cut on Plaintiff's head but did not believe that the injury was severe or required immediate medical attention.  Def. 56.1 ¶ 54.  Sherrod was able to participate in the interview and ultimately provide a written statement detailing the events of the shooting.  *Id.* at ¶ 55.  Further, at no time while in Tenety's presence did Plaintiff complain of any injury or request medical attention.  *Id.* at ¶ 58.  Sherrod was able to communicate and did not exhibit any signs of a concussion or impairment.  *Id.* at ¶ 53.  After providing his statement, Plaintiff agreed to go with Defendant and the other unidentified detectives to show the location where he disposed of the gun.  *Id.* at ¶ 57.  The detectives drove Sherrod to the lake in Patchogue where he discarded the gun, after which he was returned to the Third Precinct.  *Id.* at ¶¶ 33, 57.

### 3. Plaintiff's Medical Treatment

The following events are not in dispute. Sherrod was next transported to the Suffolk County District Court in Central Islip. *Id.* at ¶ 33. Plaintiff did not tell the Suffolk County sheriffs that escorted him to the courtroom about his injury or request to go to the hospital. *Id.* at ¶¶ 34-35. Neither Sherrod, nor his court-appointed attorney, informed the presiding judge of Plaintiff's injury during his arraignment. *Id.* at ¶ 37.

Sherrod was then taken to the Suffolk County Correctional Facility in Yaphank, New York and visited the jail medical unit upon arrival. *Id.* at ¶¶ 38-40. Defendant Winiarski dressed Plaintiff's wound and prescribed daily bacitracin washes for seven days, as well as aspirin. *Id.* at ¶¶ 40, 43. In her record of that visit, Winiarski noted that Sherrod was struck in the head with a wooden stick, causing a superficial laceration to his scalp and that he was not in acute distress. *Id.* at ¶ 43. Defendant further referred Plaintiff to a physician, who examined and evaluated him that evening. *Id.* On August 19, 2019, Sherrod returned to the jail medical unit complaining of headaches. *Id.* at ¶ 44. Plaintiff was not treated by Winiarski on this occasion. *Id.* Sherrod, who has a history of seizures, also indicated that he had stopped taken his anti-seizure medication prior to his arrival at the jail. *Id.* Plaintiff underwent a CT scan at Peconic Bay Medical Center, which revealed that no follow up care was required. *Id.*

On August 22, 2019, Sherrod was seen by a physician in the jail medical unit after complaining of back pain. *Id.* at ¶ 45; Ex. D to Def. 56.1 at 36. The doctor noted

that the laceration to his scalp was healing well and ordered an x-ray of his spine. Def. 56. 1 ¶ 45. The x-ray did not show any evidence of injury. *Id.* Sherrod visited the jail medical unit on six occasions between August 30, 2019 and October 5, 2019, but he was not treated by Winiarski. *Id.* at ¶¶ 46-49. Plaintiff filed a grievance regarding his medical care on September 8, 2019 in which he claimed that the pain medication he was prescribed was insufficient and that he had not been advised of the results of his spinal x-ray. *Id.* at ¶¶ 63-64. On October 7, 2019, Sherrod was transferred to the Nassau County Correctional Facility. *Id.* at ¶ 50.

Plaintiff alleges that as a result of his August 13, 2019 injury he suffered a concussion and continues to suffer from migraines and PTSD. *See* Pl. Mot. at 14; Compl. at 4. Sherrod was ultimately charged with first degree assault for the shooting of his brother and pled guilty on or about November 24, 2019. Pl. Mot. at 7. About eight months after his plea and conviction, Plaintiff's brother passed away due to injuries sustained in the shooting. *Id.* As a result, Sherrod's conviction was upgraded to first degree manslaughter, and he was sentenced to twenty years in prison. *Id.*

## B. Procedural History

Initially, Plaintiff commenced this action against three John Does and one Jane Doe – all alleged to be employees of Suffolk County – by way of Complaint dated March 25, 2022. *See* Complaint, DE [1-1]. Simultaneously with his Complaint, Sherrod filed a motion for leave to proceed *in forma pauperis*. *See* DE [2]. Judge Seybert granted that application and ordered that the Complaint be served on the

Suffolk County Attorney to attempt to ascertain the full names of the unidentified Defendants. *See* Order, DE [6]. The Suffolk County Attorney thereafter identified John Doe #1 to be Mutarelli and John Doe #2 to be Tenety. *See* Letter dated Nov. 2, 2020, DE [8]. Jane Doe #1 was later determined to be Winiarski. *See* Letter dated Nov. 30, 2020, DE [13]. Summonses were issued to all three Defendants. *See* DE [10]; DE [15]. Based on the information provided in the Complaint, however, the Suffolk County Attorney was unable to ascertain which of the several detectives assisting Tenety in questioning Plaintiff was John Doe #3. *See* DE [8].

Discovery closed on February 3, 2022.[4] Defendants then moved for summary judgment, seeking to dismiss the Complaint in its entirety. *See generally* Def. Mot. Plaintiff opposed and filed a cross-motion for leave to amend the Complaint. *See generally* Pl. Mot. For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted in its entirety, that Plaintiff's Complaint be dismissed with prejudice, and that Plaintiff's Motion for leave to amend his Complaint be denied.

## II.    LEGAL STANDARDS

### A.    <u>Fed. R. Civ. P. 56</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[4] Although Sherrod claims that Defendants' Motion is premature because Plaintiff has not taken depositions or conducted any discovery from Defendants, *see* Pl. Mot. at 17, he was given every opportunity to do so. *See* DE [23] Minute Order dated May 25, 2021; DE [29] Minute Order dated Sep. 27, 2021. During that time period, Sherrod informed the Court that he did not intend to take any depositions. *See* DE [35] Minute Order dated Nov. 30, 2021.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving

9

party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at \*6, n. 10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## B. *Pro Se* Litigants at Summary Judgment

"When a *pro se* litigant is involved, although the same standards for summary judgment apply, the *pro se* litigant 'should be given special latitude in responding to a summary judgment motion.'" *Laster v. Mancini*, 07-cv-8265, 2013 WL 5405468, at \*2 (S.D.N.Y. Sep. 25, 2013) (quoting *Gonzalez v. Long*, 889 F. Supp. 639 (E.D.N.Y. 1995)) (citing *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("This court has recently stated that special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."); *Delgado v. Koehler*, 90-cv-7066, 1993 WL 227715 (S.D.N.Y. Jun. 19, 1993)). Nevertheless, a *pro se* litigant cannot rely solely upon the pleadings, *see Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006), or "conclusory allegations or unsubstantiated speculation" to defeat summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)); *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Instead, the *pro se* litigant "must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (party opposing

summary judgment "must bring to the district court's attention some affirmative indication that his [or her] version of relevant events is not fanciful").

### C. <u>Fed. R. Civ. P. 15(a)</u>

Pursuant to Fed. R. Civ. P. 15(a), courts have discretion to allow parties to amend their pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Under Fed. R. Civ. P. Rule 15(a), leave to amend shall be freely given when justice so requires."); *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion.") (internal quotation omitted).  The amendment standard is liberal so as to permit plaintiffs "to assert matters that were overlooked or were unknown at the time of the original complaint or answer."  *RCX I, LLC v. Pitter-Nelson*, No. 11-cv-03513, 2014 WL 5809514, at *5 (S.D.N.Y. Nov. 6, 2014) (internal quotation marks, citation and alterations omitted); *see Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("[Fed. R. Civ. P.] 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . .").

The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)); *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give

11

[plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). Nevertheless, a Rule 15 motion should be denied where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" *Amaya*, 285 F.R.D. at 253; *see Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("[A] motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."). The party opposing a motion to amend bears the burden of establishing that the amendment should be denied. *Joinnides v. Floral Park–Bellerose Union Sch. Dist.*, No. 12-cv-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.'") (quoting *Cummings–Fowler v. Suffolk Cty. Cnty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012)).

## III.  DISCUSSION

### A.  Defendants' Motion for Summary Judgment

Defendants seek summary judgment dismissing the Complaint in its entirety. *See* Def. Mot.  Applying the standards set forth above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted, and that the Complaint be dismissed with prejudice.

1.  <u>PLRA Exhaustion Requirement – as to Winiarski</u>

Defendants argue that, with respect to Defendant Winiarski, summary judgment is warranted because Plaintiff did not comply with the requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*  *See* Def. Mot. at 12-16.  The Court agrees.

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[.]"  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).  "Further, the PLRA mandates 'proper exhaustion' of all remedies which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  *Jones v. Sposato*, No. 16-cv-5121, 2017 WL 4023135, at *4 (E.D.N.Y. Aug. 22, 2017) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2385 (2006)) (emphasis in original), *report and recommendation adopted*, 2017 WL 4023345 (E.D.N.Y. Sep. 11, 2017).  Prisoners must therefore "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the

prison grievance process . . . and provide the level of detail necessary in a grievance to comply with the grievance procedures[.]" *Jones*, 2017 WL 4023135, at \*4 (internal citations and quotation marks omitted). "Thus, the exhaustion inquiry requires that the court 'look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Id.* (quoting *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009)). "[F]ailure to exhaust is an affirmative defense under the PLRA that must be raised and proven by defendants." *Villafane v. Sposato*, No. 16-cv-3674, 2017 WL 4179855, at \*10 (E.D.N.Y. Aug. 22, 2017) (citation and internal quotation marks omitted), *report and recommendation adopted*, 2017 WL 4157220 (E.D.N.Y. Sep. 15, 2017).

Whether all administrative remedies have been exhausted, however, does not end the inquiry "because the PLRA contains its own, textual exception to mandatory exhaustion," namely where the administrative remedies at issue are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642, 136 S.Ct. 1850, 1858 (2016). Examples of unavailable remedies include: (1) where the administrative procedure operates as a "dead end," with officers unwilling or unable to provide any relief; (2) where the scheme is "so opaque" that "no ordinary prisoner can discern or navigate it"; and (3) where inmates are thwarted from using the procedures through "machination, misrepresentation or intimidation," such as where an inmate is threatened or misled into thinking he had done all he needed to in order to commence the grievance process. *Id.* at 643-44, 136 S.Ct. at 1859-60 & n.3; *see Williams v. Priatano*, 829 F.3d 118, 123 n.2 (2d Cir. 2016) (noting that the Supreme Court's list of examples

demonstrating unavailability is illustrative not exclusive).  The burden of proving that the grievance procedure is unavailable rests with the plaintiff.  *See Hubbs v. Suffolk Cty Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

The Suffolk County Correctional Facility's Inmate Grievance Program (the "IGP") permits inmates to file grievances.  Def. Mot. at 15.  The IGP procedures are detailed in the Inmate Handbook, which is provided to each inmate upon their arrival at the facility.  *See* Ex. B to Def. 56.1.  Under the IGP, grievances must be filed within five days of the occurrence giving rise to the grievance.  *Id.* at 12.  The Inmate Handbook provides detailed instructions as to how a grievance should be reported, as well as the process for appealing the decision of the Grievance Coordinator to the Warden and then to the New York State Commission of Corrections.  *Id.* at 13.  It is not disputed that Plaintiff filed a grievance on September 8, 2019.  Def. 56.1 ¶ 63; Pl. Mot. at 6.  The grievance, however, did not name Winiarski, and did not complain regarding the treatment of Sherrod's head wound on August 14, 2021.  *See* Ex. G to Def. 56.1.  Plaintiff instead complained of "head, back [and] spine" pain, noted that his pain medication was not working, and requested the results of x-rays taken the week before.  *Id.*  Notably, the grievance failed to allege that Winiarski was responsible for Sherrod's injuries, or that he received insufficient medical care from her.  Thus, there are no genuine issues of material fact regarding whether Plaintiff exhausted administrative remedies as to Winiarski under the PLRA in connection with the incident at issue – he did not.

The remaining question, then, is whether Plaintiff's failure to exhaust administrative remedies should be excused on unavailability grounds. Plaintiff has presented no evidence to support a finding that the IGP procedures were unavailable to him with respect to his claims in this action.[5] Sherrod also concedes that he was aware of the IGP procedure by way of his submission of a grievance on September 8, 2019. *See* Ex. G to Def. 56.1. Moreover, Defendants asserted Plaintiff's failure to comply with the PLRA as an affirmative defense in their Answer and, thus, there is no waiver. *See* Answer DE [17], ¶ 13; *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (citations omitted) ("[The defendant] raised [the non-exhaustion] defense in his answer to [the] complaint and has continued to assert it throughout this litigation. Thus he has not waived [this] defense."). Accordingly, there exist no genuine issues of material fact with respect to the availability of grievance procedures, and Defendant Winiarski is entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies in accordance with the PLRA.

### 2. Deliberate Indifference to Serious Medical Needs – as to All Defendants

Even if Sherrod had satisfied the requirements of the PLRA with respect to Winiarski, summary judgment dismissing the Complaint against all three

---

[5] In response to Defendants' PLRA argument, Sherrod claims that the statute is inapplicable because he was not an inmate of the Suffolk County Correctional Facility at the time his claim arose. Pl. Mot. at 6. The record, however, reflects that Plaintiff was treated by Winiarski upon his admission to that facility. Ex. D to Def. 56.1 at 58-59. In the alternative, Sherrod requests additional time to respond to the PLRA argument. Pl. Mot. at 19. Given that Plaintiff's Opposition was submitted nearly three months after the court-ordered deadline, *see* Order dated Apr. 19, 2022; Order dated Aug. 24, 2022, the Court respectfully recommends that this request be denied.

Defendants would still be warranted.  Plaintiff brings a Section 1983 claim based on the denial of prompt and adequate medical care for the head wound he suffered on August 13, 2019.  Compl. at 4.

> 42 U.S.C. § 1983 provides, in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

Although Sherrod's theory of liability arising under Section 1983 is not explicitly delineated, the Court interprets the Complaint to assert a cause of action for deliberate indifference to serious medical needs.  *See* Compl. at 4; *see Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").  While a claim for deliberate indifference by a post-conviction prisoner is analyzed under the

Eighth Amendment, the same claim by a pretrial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment. *Yancey v. Robertson*, 828 Fed. App'x 801, 803 (2d Cir. 2020); *Horace v. Gibbs*, 802 Fed. App'x. 11, 13-14 (2d Cir. 2020). Because Plaintiff was a pretrial detainee at the time of the events giving rise to his claim, the Court applies the Fourteenth Amendment standard.

A Fourteenth Amendment claim for deliberate indifference to serious medical needs embodies both an objective and a subjective prong. *Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994). To satisfy the objective prong, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin,* 467 F. 3d at 280 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991)). To determine whether a deprivation is sufficiently serious, courts first look to whether the prisoner or detainee was actually deprived of adequate medical care. *Id.* To satisfy this standard, officials need only provide "reasonable care." *Id.* (citing *Framer v. Brennan,* 511 U.S. 825, 844-47, 114 S.Ct. 1970, 1982-84 (1994)). The inquiry then turns to whether the deprivation of care was sufficiently serious. *See Jones v. Westchester Cty. Dep't of Corrections Medical Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Horace,* 802 Fed. App'x. at 14 (quoting *Darnell v. Pineiro*, 849 F. 3d 17, 30 (2d Cir. 2017)). Relevant factors include whether "'a reasonable doctor or patient would find it important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it

causes 'chronic and substantial pain.'" *Salahuddin*, 467 F. 3d at 280 (2d Cir. 2006) (quoting *Chance v. Armstrong*, 143 F. 3d 698, 702 (2d Cir. 1998)).    A delay in rendering medical treatment does not rise to the level of a constitutional violation unless the plaintiff can show that "he sustained substantial harm because of the delay." *Smith v. Montefiore Medical Center-Health Services Div.*, 22 F. Supp. 2d 275, 280 (S.D.N.Y. 1998) (quoting *Burtton v. Gritter*, 95-cv-504, 1995 WL 729312, at *4 (N.D. Ind. Nov. 17, 1995)).

To satisfy the subjective prong of the deliberate indifference standard, the official must act with a "sufficiently culpable state of mind." *Hill*, 657 F. 3d at 122 (quoting *Wilson*, 501 U.S. at 298, 111 S.Ct. at 115).    The plaintiff must prove that the "defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F. 3d at 35.    Under this standard, "more than negligence is required to hold a defendant liable" for deliberate indifference.    *Id*.    The Court concludes that neither the objective nor subjective prong has been met in this case with respect to each of the three Defendants.

### a.  Objective Prong – Seriousness of Alleged Deprivation

Applying the above standards, Plaintiff has not established that he was denied adequate medical care.    It is undisputed that Sherrod suffered a two-inch long superficial laceration to his scalp prior to his arrest.  *See* Def. 56.1 ¶ 43; Pl. Mot. at 8.

Upon Plaintiff's arrival at the Suffolk County Correctional Facility, Winiarski dressed the wound, applying peroxide and "some type of medicine." Pl. Mot. at 13; *see* Def. 56.1 ¶¶ 40-42. Sherrod was further prescribed daily washes of the wound, bacitracin, and aspirin. Def. 56.1 ¶ 43. During a follow up visit to the medical unit, Plaintiff's physician noted that his laceration was "healing well." Def. 56.1 ¶ 45. Nothing in the record suggests that the medical care Sherrod received for his wound was unreasonable. *See Jones*, 557 F. Supp. 2d at 413 (noting that prisoners are not entitled to "whatever care [they] desire," but rather only "reasonable care"); *see also Padilla v. Bobb-Diallo, No.* 917-cv-1150, 2020 WL 3038135, at *7 (N.D.N.Y. Jan. 13, 2020), *report and recommendation adopted,* 2020 WL 1025159 (N.D.N.Y. Mar. 3, 2020) (concluding that the objective prong was not met where plaintiff's medical needs were reasonably treated and monitored).

Moreover, there is nothing in the record to suggest that the delay in receiving treatment for his head wound caused or was likely to cause Plaintiff "substantial harm" sufficient to rise to the level of a constitutional violation. *Smith*, 22 F. Supp. 2d 275, 281. Sherrod was arrested in the early morning hours of August 14, 2019 and was treated by Winiarski upon his arrival at the Suffolk County Correctional Facility at approximately 8:45 p.m. that same day. *See* Ex. D. to Def. 56.1. Moreover, Plaintiff's medical records from the following days indicate that neither his CT scan nor spinal x-ray revealed any evidence of further injury. Def. 56.1 ¶¶ 44-45. Further, courts in this Circuit have consistently held that cuts, lacerations, bruises and other superficial injuries are not sufficiently serious to support a deliberate indifference

20

claim. *See e.g., Morris v. City of New York,* No. 20-cv-9314, 2021 WL 4461994, at *6 (S.D.N.Y. Sep. 29, 2021) (dismissing deliberate indifference claim where Plaintiff suffered lacerations to his face and scalp); *Goodwin v. Kennedy*, No. 13-cv-1774, 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) (determining that several lacerations to arms and legs did not constitute a serious medical condition); *see also Rodriguez v. Mercado*, No. 00-cv-8588, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (concluding that bruises to head, back and wrist insufficient to sustain Eighth Amendment claim). A delay of less than one day in treating such an injury cannot be sufficiently serious as to amount to a constitutional violation. Accordingly, there are no genuine issues of material fact regarding whether Sherrod suffered a sufficiently serious deprivation of medical care. The objective prong of the test has not been satisfied.

### b. Subjective Prong – Defendants' States of Mind

Even assuming that Plaintiff was subjected to a sufficiently serious deprivation in medical care, Sherrod has failed to establish that Defendants acted with "deliberate indifference" to his condition. *Yancey*, 828 Fed. App'x at 803. On this issue, the Court considers each Defendant in turn.

### i. Officer Mutarelli

With to respect to Mutarelli, it is undisputed that Sherrod stated that he was in pain and asked to be taken to the hospital while he was being taken to the Third Precinct. Def. 56.1 ¶ 25; Pl. Mot. at 10. Defendant informed Plaintiff that he needed to bring him to the station and instructed him to speak with the officers there once

he arrived.  Def. 56.1 ¶ 26; Pl. Mot. at 10.  Following his request for medical care, Sherrod engaged Mutarelli in conversation regarding the upcoming presidential election.  Def. 56.1 ¶ 27; Pl. Mot. at 10.  Although Defendant was aware of Plaintiff's head wound and pain, there is no evidence to suggest that Mutarelli intentionally deprived Plaintiff of adequate medical care or recklessly failed to act with reasonable care.  *See Darnell*, 849 F. 3d at 35.  Considering the facts in the light most favorable to Sherrod, although he was suffering from a head wound and some amount of pain, he was also conscious and engaging in conversation with Defendant.  Although Mutarelli's assessment of Plaintiff's condition may have been incorrect, mere negligence is insufficient to establish a constitutional violation.  *Darnell*, 849 F. 3d at 36; *Rodriquez v. City of New York,* No. 15-cv-7945, 2018 WL 1276826, at *6, n. 2 (S.D.N.Y Mar. 9, 2018) (dismissing plaintiff's deliberate indifference claim where officer was merely negligent).  As such, there are no genuine issues of material fact as to whether Mutarelli acted with the requisite intent to satisfy the subjective prong of the deliberate indifference standard – he did not.

### ii.  Detective Tenety

Nor did Detective Tenety act with deliberate indifference to Sherrod's condition.  Under Plaintiff's version of events, he told Tenety that he wished to go to the hospital to be treated for his head wound.  Def. 56.1 ¶ 30; Pl. Mot. at 11.  Although Sherrod testified that he was in and out of consciousness throughout the interview, he also stated that he was able to provide his account of the shooting to Defendant.  Pl. Mot. at 11-12.  Further, Plaintiff did not counter Defendants' assertion that the

22

laceration was in the process of healing while he was being interviewed. *Id.* at 11. Similar to Mutarelli, Tenety evaluated Sherrod's condition and determined that immediate medical care was not necessary. Although he may have been negligent in this assessment, negligence alone is insufficient to establish a claim of deliberate indifference to medical needs. *See Darnell*, 849 F. 3d at 36, *Rodriquez,* 2018 WL 1276826, at *6, n. 2.

### iii. Nurse Winiarski

Lastly, Winiarski was not deliberately indifferent to Plaintiff's medical needs. It is undisputed that Defendant only administered treatment for Sherrod's laceration when he arrived at the Suffolk County Correctional Facility. Pl. Mot. at 13; Def. 56.1 ¶¶ 40-42, 46-49. Sherrod did not articulate how this treatment was lacking. And as stated above, even if Defendant's treatment was somehow negligent, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). In any event, and also as set forth above, a plaintiff's disagreement with the manner in which his condition was treated and his belief that he should have received more or different treatment is not, without more, sufficient to state a claim. *Lopez v. Phipps*, No. 18-cv-3605, 2019 WL 2504097, at *9-10 (E.D.N.Y. Jun. 17, 2019) (dismissing deliberate indifference claim where plaintiff's head injury was treated with painkillers); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 720 (S.D.N.Y. 2017) (concluding that defendant did not act with the requisite state of mind where prison doctor treated plaintiff's wound, prescribed follow up care and did not treat plaintiff

23

again).   Accordingly, there is no evidence that Winiarski acted with deliberate indifference to Sherrod's medical condition.[6]

### B.  Plaintiff's Motion to Amend the Complaint

In addition to his opposition, Plaintiff filed a cross-motion for leave to amend the Complaint.  *See* Pl. Mot.  For the reasons set forth below, the Court respectfully recommends that Plaintiff's Motion be denied.

Although Sherrod did not submit a proposed amended complaint, given his *pro se* status, the Court construes Plaintiff's Motion as seeking to assert a Fifth Amendment claim for a violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), and a Fourteenth Amendment Substantive Due Process claim, both under Section 1983,[7] as well as a state law claim for negligent hiring and training.  *See* Pl. Mot. at 16.  The Court determines that any amendment to add the federal causes of action would be futile because both claims fail as a matter of law and the Court should decline to exercise supplemental jurisdiction over any state law cause of action.

---

[6] Having concluded that summary judgment is appropriate on the merits of Plaintiff's claims as to all Defendants, the Court does not reach Defendants' qualified immunity argument.

[7] Defendants argue that any claims pursuant to Section 1983 asserted in an amended complaint would be time-barred.  *See* Defendants' Reply in Support of Motion for Summary Judgment, DE [51], at 3.  The Court notes that the statute of limitations for Section 1983 claims is three years, *see Curto v. Edmundson,* 392 F.3d 502, 504 (2d Cir. 2004), and the events at issue took place over three years prior to Plaintiff's filing of his motion. Nevertheless, an otherwise untimely amendment will be permitted if it is deemed to "relate back" to the original complaint.  Fed. R. Civ. P. 15(c)(1).  An amendment relates back where it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Here, Sherrod's Fifth and Fourteenth Amendment claims arise out of Tenety's interrogation, which is the same occurrence that gives rise to his deliberate indifference claim.  As such, these claims are not time-barred.

1.  Fifth Amendment

Sherrod alleges that Tenety elicited his statement regarding the shooting of Davis without administering Plaintiff's *Miranda* rights.  Pl. Mot. at 11.  "The remedy for a *Miranda* violation, [however,] is the exclusion from evidence of any ensuing self-incriminating statements and not a civil rights action."  *Guzman v. U.S.*, No. 11-cv-5834, 2013 WL 543343, at *11 (S.D.N.Y. Feb. 14, 2013) (quoting *Neighbour v. Covert*, 68 F. 3d 1508, 1510-11 (2d Cir. 1995)).  Moreover, the Supreme Court recently held that a violation of *Miranda* alone "does not constitute the deprivation of a right . . . secured by the Constitution for the purposes of Section 1983."  *Vega v. Tekoh,* 142 S.Ct. 2095, 2101, (2022); *Price v. Peress,* No. 18-cv-4393, 2022 WL 4638148, at *14 (E.D.N.Y. Sep. 30, 2022) (dismissing Section 1983 claim for violation of *Miranda*).  Accordingly, Sherrod's proposed Fifth Amendment claim fails as a matter of law.

2.  Fourteenth Amendment Substantive Due Process

"A *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit even when a confession is not used against the declarant in any fashion."  *Gardner v. McArdle*, 461 F. App'x 64, 66 (2d Cir. 2012) (quoting *Deshawn E. v. Safir*, 156 F. 3d 340, 348 (2d Cir. 1998)).  Law enforcement officials violate the due process clause of the Fourteenth Amendment where their conduct is such "as to overbear [the suspect's] will to resist and bring about confessions not freely self-determined."  *Deshawn E.*, 156 F. 3d at 349 (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741 (1961)).  The challenged conduct must be the "kind of

misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran v. Burbine*, 475 U.S. 412, 433-34, 106 S.Ct. 1135 (1986). Plaintiff has not alleged that Tenety engaged in conduct "so coercive as to amount to a *per se* constitutional violation." *Deshawn E.*, 156 F. 3d at 349. Sherrod testified that Defendant asked him to explain what happened, and he did so, which Tenety then recorded in a written statement. Pl. Mot. at 11. Defendant then read the written statement back to Plaintiff and Sherrod acknowledged as it accurately reflecting his account. *Id.* Although Plaintiff stated he did not fully understand what Tenety had read to him, he signed the statement approximately twenty minutes later. *Id.*; *see* Ex. H to Def. 56.1. Sherrod has not provided any evidence to suggest that Defendant's conduct was so coercive as to "exceed the bounds of due process." *Deshawn E.*, 156 F. 3d at 349-50 (concluding due process clause was not violated where there was no evidence police used coercive interrogation tactics). Accordingly, Plaintiff's proposed Due Process claim also fails.

### 3. Supplemental Jurisdiction

Finally, Sherrod's Motion purports to assert a state law claim for negligent hiring and training, presumably based on Defendants' failure to "follow police protocol." Pl. Mot. at 6, 16.[8] Having recommended that Plaintiff's federal claims be dismissed, the Court further recommends declining to exercise supplemental

---

[8] To the extent such an allegation could be construed as a *Monell* failure to train claim, *see Esmont v. City of N.Y,* 371 F. Supp. 2d. 202, 213 (E.D.N.Y. 2005), such a cause of action would still require evidence of a constitutional violation, which Plaintiff has not provided. *Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.").

jurisdiction over the alleged state law cause of action. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.") (internal quotation marks omitted)). Indeed, in the interest of comity, "the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or on summary judgment grounds, courts should abstain from exercising pendant jurisdiction." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 426 (E.D.N.Y. 2017) (internal citations and quotation marks omitted). Accordingly, the Court respectfully recommends declining to exercise supplemental jurisdiction over any proposed additional state law claim.

Having determined that Sherrod's proposed additional federal claims fail as a matter of law and that supplemental jurisdiction over his proposed state law claim should be declined, the Court concludes that amendment would be futile.[9] Accordingly, the Court respectfully recommends that Plaintiff be denied leave to file an amended complaint.

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that that Defendants' Motion be granted in its entirety, that Plaintiff's Complaint be dismissed with prejudice, and that Plaintiff's Motion for leave to amend his Complaint be denied.

---

[9] In reaching this conclusion, the Court expresses no opinion as to the viability of Plaintiff's proposed state law claim over which it has no independent jurisdiction.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.  Defendants are directed to serve a copy of it on *pro se* Plaintiff via first-class mail and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:        Central Islip, New York
              February 1, 2023

                                    /s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge

28